

May 23, 2019

**VIA EMAIL**

**Richard Fama**
Direct Phone  212-908-1233
rfama@cozen.com

The Honorable Katherine Polk Failla, USDCJ
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2103
New York, New York 10007

Re:  <u>Solange Troncoso v. TGI Friday's, Inc.</u>; Case No. 1:19-cv-02735-KPF-KHP
      Pre-Motion Submission and Letter Request for a Pre-Motion Conference

Dear Judge Failla:

My office represents TGI Friday's, Inc. ("TGIF") in the above-referenced matter.  Pursuant to Section 4(A) of Your Honor's Rules and Procedures, TGIF submits this letter to request a Pre-Motion Conference in light of TGIF's anticipated motion to dismiss Plaintiff's Class Action Complaint ("Complaint").  The bases of TGIF's anticipated motion to dismiss are detailed below.

**I.      Factual Background**

This matter arises out of Plaintiff's alleged purchase of "TGI Fridays Sour Cream & Onion Potato Skins chips" from a New York convenience store in June of 2018.  Plaintiff alleges that the snack chips do not "actually contain any potato skins" which she contends are "associated with health and nutrition."  On that basis, Plaintiff alleges that the snack chips' labeling "deceives consumers into believing that they are receiving a healthier snack."  For the Court's convenience, TGIF includes with this letter as Exhibit "A" copies of the snack chips' packaging that were included in the Complaint.

The snack chips' labeling is not misleading.  The front of the packaging reads "Potato Skins Snacks," followed by the flavor which includes Bacon Ranch, Cheddar & Bacon, and Sour Cream & Onion.  Immediately underneath the flavor of the snack chips is a picture which clearly depicts the chips contained within the package.  Taken as a whole, any reasonable consumer knows exactly what she is receiving when purchasing the product:  a potato-based snack chip.

Nevertheless, Plaintiff filed this putative class action on behalf of various putative classes and sub-classes asserting claims under:  (1) New York General Business Law ("GBL") § 349; (2) GBL § 350; (3) and common law fraud.

**II.     TGIF's Anticipated Motion to Dismiss**

TGIF anticipates filing a motion to dismiss the Complaint, in full, for failure to state a claim upon which relief can be granted.  The bases upon which TGIF intends to rely are detailed below.

The Honorable Katherine Polk Failla, USDCJ
May 23, 2019
Page 2
_____

This office has advised Plaintiff's counsel that a motion to dismiss is anticipated. Plaintiff's counsel has not responded to our requests to confer prior to the filing of this letter.

      A.    **Plaintiff's Complaint Fails to Sufficiently Allege That There Are No Potato Skins in the Snack Chips**

Plaintiff's entire case rests upon her unsupported and conclusory allegations that the snack chips do not contain any potato skins. Rather than alleging sufficient factual averments necessary to assert that *these* snack chips do not contain any potato skins, Plaintiff rests on two flawed and insufficient arguments: (1) that "potato flakes" and "potato starch"—two of the ingredients in the snack chips—generally do not contain potato skins; and (2) that the ingredient lists for the chips do not identify potato skins. Both arguments fail.

First, Plaintiff has not sufficiently alleged that the snack chips do not contain potato skins. Plaintiff's sole allegations on this threshold issue are based on a website (www.onions-potatoes.com), which is purportedly operated by a group of Dutch companies specializing in farming machinery, and an article appearing in a journal published by an entity based in Latvia. However, this "authority" on the "industrial production" of potato flakes and potato starch in general says nothing about the ingredients used in the snack chips involved in this matter.

Second, Plaintiff alleges that the snack chips' ingredient list do not identify "potato skins." From there, Plaintiff arrives at the flawed and illogical conclusion that the chips contain no skins. This allegation is a red herring. Pursuant to 21 C.F.R. 102.5, the common or usual name of a food shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the foods or its characterizing properties or ingredients. There is nothing in the federal regulations or interpreting case law that requires an ingredient to be identified in the ingredient list by a specific part of the ingredient used, *i.e.*, a potato skin as opposed to a potato. Accordingly, Plaintiff's allegation that the snack chips contain no potato skins because potato skins are not identified in the chips' ingredient lists is of no moment, and Plaintiff's claim for relief does not rise to the level of a *plausible*—rather than *possible*—claim under *Twombly* and *Iqbal*.

Simply put, the Complaint is filled with nothing more than speculative conclusions that the snack chips in *this matter* do not contain potato skins. Because Plaintiff has not alleged any sufficient factual averments to support these conclusory statements, her allegations fail to "unlock the doors of discovery." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). As such, her Complaint should be dismissed.

      B.    **No Reasonable Consumer Would Be Misled by the Snack Chips' Packaging and Labeling**

The snack chips' packaging and labeling is not deceptive because (1) no reasonable person would believe that the snack chips are made entirely of potato skins (nor are they represented as such); and (2) no reasonable person would believe that non-refrigerated, shelf-stable snack chips are a source of "healthy" vitamins and minerals.

First, no reasonable person would be misled into believing that the snack chips are made entirely of potato skins as Plaintiff suggests. Consumers who purchase the snack chips know exactly what they are getting: a potato-based snack chip with flavors like bacon, ranch, cheddar, and sour cream and onion. To conclude that consumers would believe that the snack chips are made entirely of potato skins would require an assumption that consumers ignore the very product

depicted and described on the packaging. *See Red v. Kraft Foods, Inc.*, 10-cv-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (dismissing a claim regarding a "Vegetable Thins" product's claim to be made with real vegetables," reasoning that "[t]he fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of fresh vegetables").

Second, no reasonable person would believe that unrefrigerated, shelf-stable snack chips are a source of "healthy" vitamins and minerals. *See id.* ("Similarly, here, it strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers is healthful or contains huge amounts of vegetables simply because there are pictures of vegetables and the true phrase "Made with Real Vegetables" on the box."). Equally true here, no reasonable consumer would believe that a snack chip is a bountiful source of vitamins and minerals simply because the word "skins" appears within the products' name.

### C.    TGIF is an Incorrect Party

TGIF is an incorrect party in this putative class action lawsuit. TGIF's role with respect to the snack chips is clear: it licensed its name to Inventure Foods, Inc.—the actual distributor of the snack chips. Inventure Foods, Inc. is readily identified on the back of the snack chips' packaging as the distributor. TGIF's role as a licensor of its trademark, on its own, does not give rise to the level of liability for alleged mislabeling, and Plaintiff has not alleged any sufficient facts to support a claim against TGIF. *See, e.g.*, *Parent v. Millercoors LLC*, No. 3:15-cv-1204, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) (rejecting argument that because "advertisements created by third parties 'feature Defendant's trademark protected logo,' such advertisements 'were created with Defendant's knowledge and consent, if not at Defendant's direction'"). TGIF should be dismissed on this basis alone.

### D.    Plaintiff Does Not Plead Her Fraud Claim With Rule 9(b) Particularity

Because Plaintiff has not stated a claim pursuant to Rule 8, her fraud claim is certainly not pled with the particularity required under Rule 9(b). Specifically, Plaintiff has not pled her claim against TGIF with particularity given that, at most, TGIF merely licensed its name for the snack chips. Moreover, Plaintiff has not sufficiently alleged any falsity in the labeling, given that she does not know whether there are no potato skins in the snack chips—she is only assuming so for the sake of filing a claim and seeking discovery to confirm her allegations. This is simply not enough.

### E.    Plaintiff's Claim That the Snack Chips Are an "Imitation" Fails

Plaintiff alleges—with no specificity—that the snack chips are an "imitation" product. However, Plaintiff neither alleges what the snack chips are purportedly imitating, nor the criteria she advocates should be used to evaluate when an "imitation" product exists. Nevertheless, assuming that Plaintiff identifies what the snack chips are purportedly imitating, such a claim is preempted by the federal Food and Drug Cosmetic Act's regulations on imitation products insofar as Plaintiff is seeking to impose a different standard than what is defined under federal law.

TGIF thanks Your Honor for her attention to this matter and is available to discuss the substance of this letter at the Court's convenience.

The Honorable Katherine Polk Failla, USDCJ
May 23, 2019
Page 4
_____

Sincerely,

COZEN O'CONNOR

*/s/ Richard Fama*

BY:     RICHARD FAMA

cc: Lee Litigation Group, C.K. Lee