**COZEN O'CONNOR**
Richard Fama, Esq. (RF5358)
E. Dean Harris Porter, Esq. (DP6883)
45 Broadway, 16th Floor
New York, New York 10006
Telephone: 212-908-1229
Direct Fax:  866-263-1334
Email: rfama@cozen.com

F Brenden Coller, Esq. (FC7886) (*admitted pro hac*)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: 215-665-5518
Direct Fax:  215-701-2302
E-mail: bcoller@cozen.com

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

SOLANGE TRONCOSO,
*on behalf of herself and others similarly situated,*

                       Plaintiff,

        -against-

TGI FRIDAY'S, INC., INVENTURE FOODS,
INC., and UTZ QUALITY FOODS, LLC

                    Defendant.

_____

**Case No:**
**1:19-CV-02735(KPF)-KHP**

Hon. Katherine Polk Failla

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS'
## <u>MOTION TO DISMISS</u>

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

III.  ARGUMENT ....................................................................................................... 5

    A.    Plaintiff Fails To State Claims Upon Which Relief Can Be Granted ............................ 5

        1.    No Reasonable Consumer Would Be Misled By The Snack Chips' Labeling ................................................................................................... 6

            (a)    No Reasonable Consumer Believes The Snack Chips Are Any More "Nutritious" Than As Stated On The Nutritional Fact Panel ............................ 7

            (b)    No Reasonable Consumer Would Expect The Snack Chips To Have The Same "Taste" As Potato Skins Served In Restaurants Or Found In The Supermarket Aisle ................................ 11

            (c)    No Reasonable Consumer Would Expect That A Shelf-Stable Bag Of Snack Chips Sold At A Gas Station for $1.99 Would Contain "Genuine" Or "Authentic" Potato Skins Similar To Those Sold In Restaurants ................ 12

        2.    Plaintiff Has Not Sufficiently Pleaded That There Are No Potato Skins In The Product ................................................................................ 14

        3.    Plaintiff's Fraud Claim Fails Because There Was No Misrepresentation .............. 17

        4.    Plaintiff Has Not Stated A Claim Against TGIF ...................................... 17

        5.    Plaintiff Has Not Stated A Claim Against Utz ........................................ 19

    B.    Plaintiff Lacks Standing ................................................................................ 20

        1.    Plaintiff Has No Standing To Seek Injunctive Relief ............................. 21

        2.    Plaintiff Lacks Standing To Assert Claims Based On Representations Not Seen ................................................................................................... 23

    C.    GBL Statutes Do Not Apply To Out Of State Plaintiffs ................................ 24

IV.   CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09-CV-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ..........................................7, 8

*Alaei v. Kraft Heinz Food Co.*,
   No. 15-CV-2961, 2016 U.S. Dist. LEXIS 63914 (S.D. Cal. Apr. 22, 2016) ..........................15

*Albert v. Blue Diamond Growers*,
   151 F. Supp. 3d 412 (S.D.N.Y. 2015) ...................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... *passim*

*Atik v. Welch Foods, Inc.*,
   No. 15-CV-5405, 2016 WL 5678474 (E.D.N.Y. Sep. 30, 2016) ..........................................22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................5, 6, 15

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015) .................................................................................................5

*Bowring v. Sapporo U.S.A., Inc.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017) ..................................................................................17

*Casey v. Odwalla, Inc.*,
   338 F. Supp. 3d 284 (S.D.N.Y. 2018) ..................................................................................22

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..............................................................................................................20

*Daniel v. Tootsie Roll Industries, LLC*,
   No. 17-CV-7541, 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ............................................17

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ..............................................................................................6, 8

*Gale v. Int'l Bus. Machs. Corp.*,
   9 A.D.3d 446, 447 (2d Dept. 2004) ....................................................................................23

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...................................................................................5, 23

*Goshen v. Mut. Life Ins. Co.*,
    98 N.Y.2d 314 (2002) ..................................................................................24, 25

*Gotlin v. Lederman*,
    616 F. Supp. 2d 376 (E.D.N.Y. 2009) ....................................................................25

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)..........................................................................................5

*Haseman v. Gerber Products Co.*,
    No. 15-CV-02995, 2016 WL 5477595 (E.D.N.Y. Sept. 28, 2016) ........................21

*Hilsley v. General Mills, Inc.*,
    376 F. Supp. 3d 1043 (S.D. Cal. 2019)....................................................................18

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-CV-5489, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)...........................10

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017)..................................................................6, 21

*Manchouk v. Mondelez Int'l Inc.*,
    No. 13-CV-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ..........................14

*New York State Elec. and Gas Corp. v. FirstEnergy Corp.*,
    766 F.3d 212 (2d Cir. 2014)......................................................................................19

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)..................................................................20, 21, 22, 23

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)..................................................................................................20

*Orlander v. Staples, Inc.*,
    802 F.3d 289, 300 (2d Cir. 2015)...............................................................................6

*Oswego laborers' local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20, 26 (1995) .............................................................................................6

*Parent v. Millercoors LLC*,
    No. 15-CV-1204, 2016 WL 3348818 (S.D. Ca. June 16, 2016).......................18, 19

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019)...........................................................9, 15, 22

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
    No. 11-CV-6546, 2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ...................................23

*Red v. Kraft Foods, Inc.*,
    No. 10-CV-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ...................................... 10, 13

*Reyes v. Crystal Farm Refrigerated Distribution Company*,
    No. 18-CV-2250, 2019 WL 3409883 (E.D.N.Y. July 26, 2019) ................................................ 8

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004) ............................................................................................. 20

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................................................... 20

*Szymczak v. Nissan N. Am., Inc.*,
    No. 10-CV-7493, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ..................................... 24, 25

*Thomas v. JPMorgan Chase & Co.*,
    811 F. Supp. 2d 781 (S.D.N.Y. July 29, 2011) ................................................................ 25

*Tyman v. Pfizer, Inc.*,
    No. 16-CV-0694, 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) ........................................ 23

*Warner v. Starkist Co.*,
    No. 18-CV-406, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ......................................... 21

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011) ............................................................................. 19

*Werbel v. Pepsico, Inc.*,
    No. 09-CV-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ......................................... 14

**Statutes**

N.Y. Gen. Bus. Law § 349 .................................................................................................... 5, 24

N.Y. Gen. Bus. Law § 350 .................................................................................................... 5, 24

**Other Authorities**

21 C.F.R. § 102.5(a) .................................................................................................................. 15

21 C.F.R. § 104.20(a) .................................................................................................................. 9

45 F.R. 6314-6324 .................................................................................................................. 9, 10

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 1, 20

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 5, 24

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants TGI Friday's, Inc. ("TGIF"), Inventure Foods, Inc. ("Inventure"), and Utz Quality Foods, LLC ("Utz") (collectively, "Defendants") submit the following Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("FAC").

## I.    INTRODUCTION

To any reasonable consumer, a pre-packaged, shelf-stable, unrefrigerated bag of snack chips purchased for $1.99 from a gas station is a snack, plain and simple.  It is purchased because it is a convenient, inexpensive, and satiating snack food in the same category as potato chips, crackers, and pretzels.  To Plaintiff Solange Troncoso, however, a snack chip is apparently much more.  Indeed, she claims that when she purchased a bag of TGI Friday's Potato Skins Snacks–Sour Cream & Onion Flavor (the "Snack Chips") from a BP gas station in the Bronx, she expected them to have the same attributes as a component of a meal, having the same taste as the hot potato skins appetizer loaded with bacon, sour cream, and cheddar cheese that she would order from the menu at a TGIF restaurant and the same nutritional values as the skins of fresh potatoes found in supermarket produce aisles.  The fact that Plaintiff attempts to compare the Snack Chips to two such wildly divergent products alone renders her claim entirely unreasonable.  Simply put, Plaintiff's claims strain credibility, are nonsensical, and should be dismissed before they drain any more of the Court's and parties' resources.

Plaintiff—now on her FAC—struggles to clearly articulate a theory of why reasonable consumers would be misled by the Snack Chips' labeling.  In her original Complaint, Plaintiff focused on the purported health benefits associated with the vitamins and minerals allegedly found in potato skins and claimed that she expected to receive those same health benefits in the Snack Chips.  Now, in her FAC, Plaintiff has shifted course.  In addition to doubling down on her claim

of health benefits associated with potato skins, Plaintiff advances new claims that she and reasonable consumers would expect the Snack Chips to have the same "taste" (the taste to which she refers is unknown) as "potato skins" and that she and reasonable consumers expected the Snack Chips to be "genuine" and "authentic" potato skins that one could order in a TGIF restaurant. These claims defy common sense and no reasonable consumer would hold the same beliefs that Plaintiff advances in her FAC. To that end, Plaintiff's claims under General Business Law §§ 349 and 350 and for common law fraud fail as a matter of law and should be dismissed.

In addition to the incredible nature of Plaintiff's allegations, the FAC is subject to dismissal for other reasons. First, Plaintiff's entire case rests upon the "theory" that there are no potato skins in the Snack Chips, yet she has wholly failed to support her theory with facts sufficient to maintain her claim. For example, she refers to the fact that the Snack Chips' ingredient panel does not reference potato skins as an ingredient, yet it would be a violation of the Food Drug and Cosmetic Act for Defendants to do so. Plaintiff also refers to websites that discuss the manufacturing processes of potato starch and potato flakes in general, but none of these websites refer to the actual ingredients present in the Snack Chips. And in a shear act of desperation to try to salvage her claim, she refers to a video that appeared on the *Cooking Channel* in 2015 that purports to depict a representative of Inventure discussing the manufacturing process of the Snack Chips. Notably, nowhere in that video does the purported Inventure representative state that the Snack Chips contain no potato skins. Plaintiff, therefore, is left with nothing more than the unsupported and conclusory allegation that the Snack Chips have no potato skins. Such an allegation does not permit her to proceed to discovery to confirm whether she actually has a claim.

Second, Plaintiff has named two incorrect parties in this matter. Utz—as confirmed by Plaintiff's allegations—is merely the parent company of Inventure, the alleged manufacturer of

the Snack Chips.  New York law is well-established that a parent company—without more—cannot be held liable for the acts of a subsidiary.  Plaintiff's claims against Utz, therefore, fail.  Similarly, Plaintiff's claims against TGIF, the alleged licensor of its name and trademark, are insufficient as a matter of law.  TGIF—as a mere licensor—cannot be held liable for alleged mislabeling on the Snack Chips.

Third, Plaintiff has no standing to seek injunctive relief.  Noticeably absent from Plaintiff's FAC are any allegations that she intends to purchase the Snack Chips again in the future.  As a result, she has not claimed and, indeed, cannot claim that she is at risk of future injury.  Without any such risk of future harm, Plaintiff lacks standing to seek injunctive relief.

For these reasons, and those additional reasons discussed below, it is respectfully requested that Plaintiff's FAC be dismissed with prejudice.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2019, Plaintiff filed her FAC against TGIF, Utz, and Inventure relating to her alleged purchase of a bag of "TGI Friday's Potato Skins Snacks – Sour Cream & Onion Flavor."  *See* FAC at ¶ 13.  Plaintiff attaches the following as Exhibit "A" to her FAC, which purports to be the package of the Snack Chips she allegedly purchased.

3



Plaintiff claims that, although titled "Potato Skins Snacks," the Snack Chips contain no potato

skins.  *See* FAC at ¶¶ 4-5.  Plaintiff claims that the labeling, therefore, is deceiving for three

primary reasons.  First, Plaintiff claims that when purchasing the Snack Chips, consumers believe

"that they are purchasing authentic potato skins."  *Id.* at ¶ 8.  Second, Plaintiff claims that

reasonable consumers believe that the Snack Chips will "deliver the taste of genuine potato skins,

as popularized by TGIF through its restaurants' potato skins appetizers."  *Id.* at ¶ 10.  Third,

Plaintiff claims that reasonable consumers will "pay a price premium for" the Snack Chips because

of the "nutritional qualities of potato skins."  *Id.* at ¶ 58.

On these allegations, Plaintiff asserts claims on behalf of herself and two putative classes:

a nationwide class and New York only class.  *Id.* at ¶ 71.  The FAC asserts claims for an injunction

under New York General Business Law ("GBL") § 349, a claim for damages under GBL §§ 349 and 350, and a claim for common law fraud.  *See generally* FAC.

## III.   ARGUMENT

### A.   Plaintiff Fails To State Claims Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, "the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted and alteration in original).  Although the Court must accept the material facts of the complaint to be true and to draw all reasonable inferences in the plaintiff's favor, this "'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In essence, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 473 (S.D.N.Y.

2014) (quoting *Iqbal*, 556 U.S. at 679).  To that end, a complaint must be dismissed if it cannot cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

As set forth more fully below, the allegations in Plaintiff's FAC fail to rise above the level of "labels, conclusions, and formulae" proscribed by *Twombly*.

## 1.   No Reasonable Consumer Would Be Misled By The Snack Chips' Labeling

Plaintiff's alleged experiences and expectations regarding the Snack Chips are unique to her and do not represent those experiences and expectations of a "reasonable consumer."  To state a claim for deceptive trade practices or false advertising under GBL §§ 349-350, Plaintiff must plausibly allege (1) that the challenged act or practice was consumer-oriented, (2) that it was misleading in a material way, and (3) that plaintiff suffered injury as a result of the deceptive act. *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).  Courts across the country, including those within the Second Circuit, consider conduct to be materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Kommer*, 252 F. Supp. 3d at 310-11 (citing *Oswego laborers' local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). Importantly, "[t]his inquiry is an objective one, which ... may be resolved as a matter of law on a motion to dismiss." *Kommer*, 252 F. Supp. 3d at 311; *see also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("[A] court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer").

"In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742.  Specifically, it is necessary to view "each allegedly misleading statement in light of its context on the label and in connection with the

marketing of [the product] as a whole." *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010).

As noted above, the FAC is unclear as to the theories underlying Plaintiff's alleged belief that the Snack Chips' labeling is "materially misleading."   Nevertheless, Defendants believe Plaintiff is primarily resting on three arguments:  (1) that the Snack Chips were not as "nutritious" as she believed because they purportedly did not contain potato skins; (2) she believed the Snack Chips had the same "taste" as an actual potato skin ordered in a restaurant; and (3) she believed the Snack Chips were "genuine" or "authentic" potato skins like those ordered in restaurants.  *See* FAC at ¶¶ 8, 10, 58.  None of these three theories pass the "reasonable consumer" standard and, therefore, fail as a matter of law.

> **(a)** **No Reasonable Consumer Believes The Snack Chips Are Any More "Nutritious" Than As Stated On The Nutritional Fact Panel**

Plaintiff is unique insofar as she believed that a shelf-stable package of Snack Chips purchased at a gas station for $1.99 was a source of vitamins and minerals, thus constituting a nutritious snack.  Plaintiff alleges that the Snack Chips did not contain any potato skins as an ingredient and, "[t]herefore, the [Snack Chips] as delivered simultaneously failed to convey the nutrition profile of a potato skin . . . ."  *See* FAC at ¶ 61.  Plaintiff's subjective belief is insufficiently pleaded for three primary reasons.

First, as more fully noted below, the FAC is utterly devoid of any statement regarding the level of nutrients and potato skins in the Snack Chips that would have satisfied Plaintiff such that this Court could measure the reasonableness of her expectations and beliefs.  Despite this glaring omission, it is beyond reasonable debate that if Plaintiff truly placed value on the nutritional profile of the Snack Chips, all of the information needed to inform her purchasing decision was available to her in the Snack Chips' nutritional panel which accurately included all of the nutritional values

required by the Food Drug and Cosmetic Act.  As stated above, "context is crucial" when analyzing

the reasonable consumer standard, *Fink*, 714 F.3d at 742, and an alleged misrepresentation must

be construed "in light of its context on the label."  *Ackerman*, 2010 WL 2925955, at *15.  If the

nutritional values of the Snack Chips were genuinely important to Plaintiff, those values were

clearly and conspicuously available to her in the Snack Chips' nutritional fact panel before she

made her alleged purchase, and there is no claim that the nutritional fact panel was false or

misleading in any way.  The Eastern District's decision in *Reyes v. Crystal Farm Refrigerated*

*Distribution Company*, No. 18-CV-2250, 2019 WL 3409883 (E.D.N.Y. July 26, 2019) is

informative.  There*,* the plaintiff alleged that the defendant's mashed potato packaging was

misleading because it stated "made with real butter," which the plaintiff interpreted to mean that

the mashed potatoes did not contain margarine.  *Id.* at *1.  The court rejected this theory, explaining

> To the extent that including a label on a mashed-potatoes package
> indicating that the product is "made with real butter" may create
> confusion as to whether the mashed potatoes also contain margarine,
> such confusion is sufficiently dispelled by the ingredients label on
> the back of the package, which states twice . . . that the product
> contains margarine.  These statements that the mashed potatoes
> contain margarine are clearly visible.  A reasonable consumer who
> was concerned about whether the mashed potatoes contained
> margarine would know that "the devil is in the details" and thus
> would check the ingredients label.

*Id.* at *3.

Here, there is no express statement that the Snack Chips are "nutritious" or contain vitamins

and minerals greater than the values clearly identified in the nutritional panel.  Rather, Plaintiff is

simply making the tremendous leap that because  potato skins contain certain vitamins and mineral,

consumers purchase the Snack Chips for those same nutrients, despite the undeniable fact that the

Snack Chips are a snack food and potato skins are a vegetable.  Applying the reasoning of the

Court in *Reyes*, a ***reasonable*** consumer purchasing the Snack Chips for its nutritional value would

check the nutritional panel on the packaging.  This is particularly true where, as here, the product is clearly marketed as a snack food ("snack" is in the product's name) and is not intended to serve as a vegetable or component of a meal.  No reasonable consumer, therefore, would be misled by the packaging which fully disclosed all material information to Plaintiff.

Second, even accepting as true Plaintiff's allegations that there were no potato skins in the Snack Chips—allegations which she fails to sufficiently allege—Plaintiff fails to allege how much potato skin she expected to be present in the Snack Chips and what amount would provide her with the nutritional profile she purportedly expected.  Plaintiff's omission of these critical allegations are fatal to her claims.  In *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019), the plaintiff alleged that the defendant engaged in "deceptive business practices and false advertising" under the GBL because certain dog food labeled as  "natural" contained glyphosate, as synthetic weed killer.  *Id.* at 244.  The court rejected the argument that "trace amounts of glyphosate" rendered the "natural" statement false.  *Id.* at 247.  Specifically, the court explained "Plaintiff does not set forth in his complaint the amount of glyphosate in the Products or whether that amount is harmful or innocuous."  *Id.*  Such allegations are similarly lacking here.  Plaintiff does not allege what amounts of potato skins she expected to be in the Snack Chips and what amount of nutrients such potato skins would provide.

Third, FDA has already concluded that reasonable consumers are not purchasing snack foods for their nutritional content.  FDA has promulgated regulations expressly raising concerns about fortification of foods with nutrients and went as far as to say that it does not "consider it appropriate to fortify . . . snack foods . . . ."  *See* 21 C.F.R. § 104.20(a).  FDA's "final policy statement," issued on January 25, 1980, provided the rationale behind its position.  *See* 45 F.R.

6314-6324.   Relevant to this matter is FDA's position regarding reasonable consumers'

perceptions of the nutrient-content of snacks.  Specifically, FDA explained the following:

> FDA also believes it is inappropriate to fortify snack foods such as
> candies and carbonated beverages.  **These foods are not considered
> by the public as components of meals**, and even if snack foods are
> used with meals, their nutritional contribution is, and **is understood
> by the public to be, incidental**.  To date, **neither the public nor
> the scientific community has considered snack foods to be
> appropriate carriers for added nutrients**, given the general
> adequacy and diversity of the national food supply.   Their
> fortification could readily mislead consumers to believe that
> substitution with fortified snack foods would ensure a nutritionally
> sound diet.   Moreover, such fortification would **disrupt public
> understanding about the nutritional value of individual foods**
> and thereby promote confusion among consumers and make it more
> difficult for them to construct diets that are nutritionally neither
> excessive nor deficient.

*Id.* at 6315 (emphasis added).  Put another way, FDA has confirmed that a reasonable consumer

does not believe that snack foods—such as the Snack Chips—are appropriate sources of nutrients

and that any nutrients present are "incidental."  *See Red v. Kraft Foods, Inc.*, No. 10-CV-1028,

2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Similarly, here, it strains credulity to imagine

that a reasonable consumer will be deceived into thinking a box of crackers is healthful or contains

huge amounts of vegetables simply because there are pictures of vegetables and the true phrase

"Made with Real Vegetables" on the box.").[1]  Even more, FDA has confirmed that obtaining

nutrients from snack foods would actually cause confusion to a reasonable consumer.  Finally,

FDA's statement that snack foods "are not considered by the public as components of meals"

belies Plaintiff's claim that reasonable consumers would believe that the Snack Chips possess the

---

[1] New York courts regularly consider the decisions of California courts when assessing a reasonable consumer.  *See
Kacocha v. Nestle Purina Petcare Co.*, 15-CV-5489, 2016 WL 4367991, at *14 n.22 (S.D.N.Y. Aug. 12, 2016) (noting
that "California's 'reasonable consumer' inquiry can properly inform New York's").

same or similar nutritional qualities as the skin of a potato—which is a vegetable—found in supermarkets.

Simply put, reasonable consumers do not expect snack foods, such as the Snack Chips at issue in this litigation, to provide the nutritional values or qualities of a food product normally enjoyed during a meal.  If Plaintiff actually purchased the Snack Chips under the subjective belief that they provided vitamins and minerals beyond those explicitly and accurately set forth in the Snack Chips' nutritional panel, such belief is  unique to her and is insufficient to support her claim. For this reason, Defendants' motion to dismiss should be granted.

**(b)    No Reasonable Consumer Would Expect The Snack Chips To Have The Same "Taste" As Potato Skins Served In Restaurants Or Found In The Supermarket Aisle**

Plaintiff's contention that the Snack Chips do not replicate the same "taste" as the potato skins she would order in a TGIF restaurant is similarly unavailing.  Plaintiff alleges throughout her FAC that the Snack Chips did not deliver the "taste" (whatever that subjective phrase means to Plaintiff) of a potato skin.  *See, e.g.*, FAC at ¶ 10 ("Defendants exploit TGIF's brand name as it relates to potato skins by misleading consumers into believing that the [Snack Chips] deliver the taste of genuine potato skins, as popularized by TGIF through its restaurants' potato skins appetizers."); *id.* at ¶ 63 ("Plaintiffs paid the advertised price for the [Snack Chips] on the assumption that she was purchasing a snack food consisting of authentic potato skins with genuine potato skins taste—that is, a product that was actually derived from TGIF's famous potato skins appetizer.").

However, Plaintiff's FAC neither defines  the "taste" of the Snack Chips she purchased, nor the "taste" she—and reasonable consumers—would have expected.  If Plaintiff is attempting to compare the "taste" of the Snack Chips to the potato skins appetizer one would order in a TGIF restaurant, her claim is wholly without merit.  Indeed, it is beyond cavil that no reasonable

11

consumer would believe that an unrefrigerated, shelf-stable bag of Snack Chips sold in a gas station for $1.99 would have the same or even similar taste of a warm freshly-prepared potato skins appetizer ordered from a restaurant that contains toppings such as cheese, bacon, and a dipping sauce.  Permitting Plaintiff to proceed on this theory would open a Pandora's box of litigation.  Indeed, Plaintiff's theory would subject manufacturers and distributors to class action litigation simply because a consumer did not like the "taste" of a product.  Surely, this is not the intent behind states' consumer protection statutes and stretches the role of the Courts to that of a food critic.  Accordingly, insofar as Plaintiff's claims are premised on the Snack Chips' "taste," her claims should be dismissed.

        **(c)**    **No Reasonable Consumer Would Expect That A Shelf-Stable Bag Of Snack Chips Sold At A Gas Station for $1.99 Would Contain "Genuine" Or "Authentic" Potato Skins Similar To Those Sold In Restaurants**

Finally, the Court can conclude as a matter of law that no reasonable consumer expected the Snack Chips to be "genuine" or "authentic" potato skins that one would order at a TGIF restaurant.  Despite the fact that the Snack Chips' labeling contains pictures of the actual snack chips contained in the package, Plaintiff incredibly alleges that she and putative class members expected the Snack Chips to be "genuine" and "authentic" potato skins.  *See, e.g.*, FAC at ¶ 8 ("Conscious of consumers' interest in potato skins, and the TGIF brand of potato skins in particular, Defendants have developed, manufactured, and marketed the [Snack Chips] so as to deceive consumers into believing that they are purchasing authentic potato skins."); *id.* at ¶ 12 ("Consumers are willing to pay a price premium for the [Snack Chips] because the TGIF brand name, combined with the [Snack Chips'] name of 'Potato Skins,' communicates to consumers that the [Snack Chips] are derived from genuine potato skins sold in TGIF's restaurants.  However, the [Snack Chips] and TGIF's restaurant appetizer are in fact similar only in name."); *id.* at ¶ 63

("Plaintiff paid the advertised price for the [Snack Chips] on the assumption that she was purchasing a snack food consisting of authentic potato skins with a genuine potato skins taste—that is, a product that was actually derived from TGIF's famous potato skins appetizer.").

As a threshold matter, Plaintiff's claim that the Snack Chips did not contain "genuine" or "authentic" potato skins suffers from the same fatal defect as her claims that the Snack Chips lack the nutritional value and taste of potato skins. Specifically, in the FAC, she wholly fails to define the level or quantity of potato skins in the Snack Chips that would satisfy her seemingly subjective expectations or the expectations of a "reasonable consumer." Notwithstanding this glaring omission, Plaintiff asks the Court to accept her allegation that she believed the following two products—the former being ordered and professionally prepared in a restaurant and the latter being purchased from an unrefrigerated shelf at a gas station for $1.99—were the same:

 

Plaintiff cannot credibly claim that she—nor any reasonable consumer—believed that they were receiving whole cooked potato skins (with toppings such as melted cheese, bacon, and a dipping sauce) when purchasing the bag of Snack Chips depicted in the above picture on the right. Such allegations and leaps in believability have been routinely rejected by courts on motions to dismiss. *See Red*, 2012 WL 5504011, at *3 (dismissing a claim regarding a "Vegetable Thins" product's claim to be made with real vegetables, reasoning that "[t]he fact remains that the product is a box

of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of fresh vegetables"); *Werbel v. Pepsico, Inc.*, No. 09-CV-4456, 2010 WL 2673860, at *3-5 (N.D. Cal. July 2, 2010) (dismissing claims concerning the nutritional fruit content of Cap'n Crunch's Crunch Berries cereal, stating that Crunch Berries "are shown as brightly-colored balls of cereal that no reasonable consumer would believe are made from real berries"); *Manchouk v. Mondelez Int'l Inc.*, No. 13-CV-2148, 2013 WL 5400285, at *2 (N.D. Cal. Sept. 26, 2013) (dismissing claim that Newton cookies were deceptively marketed to contain fruit because they contain fruit puree).

The labeling of the Snack Chips clearly and accurately depicts exactly what the purchaser is receiving, and no reasonable consumer would believe that the Snack Chips in a shelf-stable package and sold in a gas station for $1.99 contains potato skins similar to those purchased in a TGIF restaurant.

2. **Plaintiff Has Not Sufficiently Pleaded That There Are No Potato Skins In The Product**

Plaintiff's FAC is armed with no more than speculative allegations that the Snack Chips do not contain "actual potato skins." As the Snack Chips' packaging makes clear, they are "thick, crunchy chips" that are "made from real potatoes." *See* FAC at Exhibit "A." Without any credible support, Plaintiff then speculates that the Snack Chips do not contain "potato skins." Because these speculative allegations do not cross "the line from conceivable to plausible," this Court should dismiss Plaintiff's claims. *Iqbal*, 556 U.S. at 680.

Plaintiff fails to articulate why she believes there are no potato skins in the Snack Chips. At most, she contends that the "only potato-based ingredients in the Products are potato flakes and potato starch, not potato skins or any ingredient mentioning 'potato skins.'" *See* FAC at ¶ 6. Yet Plaintiff will not be able to point to any requirement that "potato skins" must be—or even should

be—separately listed as an ingredient in the Snack Chips' ingredient panel separate from any other potato-based ingredient.  In fact, pursuant to 21 C.F.R. § 102.5, the Food and Drug Administration requires that the "common or usual name" of a food be listed in the ingredient list.  *See* 21 C.F.R. § 102.5(a) ("The common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients.").  Here, the most simple and direct terms to describe the potato-based ingredients in the Snack Chips are "potato starch" and "potato flakes."  Any argument that potato skins should be separately identified in the ingredient list is akin to requiring the manufacturer of cherry pies to separately list cherry skin as an ingredient.  Plaintiff, therefore, is left with nothing more than a conclusory assertion that the Snack Chips do not contain potato skins.  This allegation, without more, is insufficient to state a claim for relief.  *Cf. Parks*, 377 F. Supp. 3d at 248 (finding plaintiff did not sufficiently allege "natural" labeling was misleading because of failure to allege level of herbicide in product allegedly rendering statement misleading); *Alaei v. Kraft Heinz Food Co.*, No. 15-CV-2961, 2016 U.S. Dist. LEXIS 63914, at *6-7 (S.D. Cal. Apr. 22, 2016) (dismissing complaint alleging that the ingredients in Heinz 57 Sauce were not "Made in the USA" where plaintiff did not specify which "components" of the product were purportedly "made outside of the United States").  Similar to *Alaei*, where the court found that the plaintiff failed to state a claim that Heinz ketchup was falsely labeled as "Made in the USA" because she could not identify which ingredients in the product were of foreign origin, Plaintiff here cannot rest on the mere conclusion that the Snack Chips did not contain potato skins without any supporting factual allegations.

Further, Plaintiff's purported "evidence" that the Snack Chips contain no potato skins does not raise her right to relief to the level of plausibility required under *Twombly* and *Iqbal*.  To the

contrary, it further emphasizes the speculation inherent in her claims.  For instance, Plaintiff points to general descriptions of potato flake and starch manufacturing processes.  However, some of these references describe production methods outside the United States.  *See* FAC at n.13 (describing practices in India).  Others describe methods of potato flake manufacturing in the context of a report on air quality standards for the Environmental Protection Agency.  *See id.* at n.10.  There is not a single allegation in the FAC, however, that ties these manufacturing processes to the Snack Chips and ingredients used therein.  These allegations, therefore, are insufficient to allege that there are no "potato skins" in the Snack Chips.

Plaintiff may also attempt to convince the Court that a *Cooking Channel* video referenced in the FAC establishes that there are no "potato skins" in the Snack Chips.  It does not.  In fact, Plaintiff's reliance on the video confirms her desperation to salvage her claim.  It also confirms that she did not conduct an adequate investigation before filing her initial Complaint or FAC.  To be sure, the alleged Inventure employee depicted in the *Cooking Channel* video does not state that there are potato skins in the Snack Chips.  Significantly, he also does not state that there are no potato skins in the Snack Chips.  Simply put, the alleged Inventure representative says nothing about the presence or absence of potato skins in the Snack Chips.  Yet, Plaintiff relies on this wholly irrelevant video to support her contention that Defendants engaged in deceptive conduct.  Reference to this video is nothing more than a red herring, and any argument by Plaintiff that this video advances her unfounded claim that the Snack Chips do not contain potato skins is  the equivalent of claiming that the Snack Chips' packaging does not contain air because air is not mentioned in the video.

Simply put, Plaintiff has initiated this action with nothing more than speculation and a subjective belief that the Snack Chips do not contain potato skins.  Her FAC contains insufficient

allegations to state a claim for relief.  At most, she advances conclusory allegations without any factual support.  As noted by the Supreme Court, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 679.  Plaintiff's claims, therefore, should be dismissed.

### 3. Plaintiff's Fraud Claim Fails Because There Was No Misrepresentation

As discussed above, Plaintiff has failed to sufficiently allege that the Snack Chips were mislabeled or that a reasonable consumer would be misled by its labeling.  These failures are fatal to her claim for common law fraud.  It is axiomatic that to sustain a claim for negligent misrepresentation or fraud, the complaint must allege the defendant made an inaccurate statement or omission.  *See Daniel v. Tootsie Roll Industries, LLC*,  No. 17-CV-7541, 2018 WL 3650015, at *15 (S.D.N.Y. Aug. 1, 2018) (dismissing plaintiff's claim for common law fraud "for essentially the same reason" as its GBL §§349-350 claims upon finding that the products' labeling did not deceive a reasonable consumer); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (holding that a finding that defendant did not misrepresent the product origin under the reasonable consumer standard was also fatal to plaintiff's fraud claim).  Here, just as in *Daniel* and *Bowring*, Plaintiff's fraud claim should be dismissed because her GBL claims are insufficiently pleaded as a matter of law.

### 4. Plaintiff Has Not Stated A Claim Against TGIF

Plaintiff's claims against TGIF should be dismissed because TGIF merely licensed its name for the Snack Chips.  Plaintiff alleges that Inventure "manufactures and distributes" the Snack Chips.  *See* FAC at ¶ 28.  Plaintiff further concedes that the Snack Chips are merely "marketed under [TGIF's] trademarked brand name" and that it licenses its name for the Snack Chips.  *Id.* at ¶ 26.  Under these circumstances, there can be no liability against TGIF.

The Southern District of California rejected claims against a licensor under similar circumstances in *Hilsley v. General Mills, Inc.*, 376 F. Supp. 3d 1043 (S.D. Cal. 2019). There, the plaintiff brought claims that the representations "no artificial flavors" and "naturally flavored" on the labeling of fruit snacks were misleading because the products allegedly contained malic acid. *Id.* at 1046. The claims were asserted against the manufacturer, distributor, advertising agencies, and media companies "which licensed the use of children's cartoon characters for marketing." *Id.* As to the licensing defendants, the plaintiff alleged "[d]ue to the pervasive presence of [their] character[s] in the Product's marketing and labeling, [they are] alleged under California law to have both enterprise and apparent-manufacturer liability . . . ." *Id.* at 1051. The court found that these allegations were "too bare and conclusory to be 'entitled to the assumption of truth'" and did "not provide the facts necessary to raise her 'right to relief above the speculative level.'" *Id.* Here, like in *Hilsley*, Plaintiff's allegations against TGIF as a mere licensor are insufficient to "raise her 'right to relief above the speculative level'" and she has not stated a claim against it.

Moreover, Plaintiff's conclusory allegation that TGIF had "control over the marketing" of the Snack Chips, *see* FAC at ¶ 26, does not salvage her claims. Instructive on this issue is *Parent v. Millercoors LLC*, No. 15-CV-1204, 2016 WL 3348818 (S.D. Ca. June 16, 2016). In *Parent*, the plaintiff brought suit because the defendant allegedly "created the deceptive and misleading impression that Blue Moon is a 'craft beer.'" *Id.* at *1. More specifically, Plaintiff claimed, without any factual support, that the Defendant endorsed third party advertisements for craft beer sales, which include Blue Moon, based on the advertisements featuring Defendant's trademark" and also that "because advertisements created by third parties 'feature Defendant's trademark protected logo,' such advertisements 'were created with Defendant's knowledge and consent, if not at Defendant's direction.'" *Id.* Rejecting that argument, the court explained "the law is clear

and dispositive [that a] trademark owner's grant of permission to another to use the owner's mark, combined with efforts to 'police' such use, do not make the user the agent or intermediary of the owner.  The owner may retain sufficient control to protect and maintain its interest in the mark without establishing an agency relationship." *Id.*  "Put another way, '[t]he use of such a mark does not constitute an endorsement.'" *Id.*  Finally, and particularly relevant to the case at bar, in its decision, the court in *Parent* stated "as Defendant correctly points out, unfair competition claims cannot be predicated on vicarious liability." *Id.* at *7.  Plaintiff's claims against TGIF are no different than the claims in *Hilsley* and *Parent*, and TGIF should accordingly be dismissed from this matter.

### 5.   Plaintiff Has Not Stated A Claim Against Utz

Plaintiff has not adequately stated a claim against Utz because it is being sued only in its capacity as the parent company of Inventure.  "It is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *New York State Elec. and Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 223 (S.D.N.Y. 2011) ("It is well accepted that a parent corporation is not liable for the actions of its subsidiary absent facts sufficient to pierce the corporate veil").  In holding that the plaintiff did not have standing to bring an action against a parent company, the court in *Weinstein* noted that the plaintiff did not plead any factors to justify piercing the corporate veil and the plaintiff's "sole basis for . . . standing to sue [the parent] is its parent/subsidiary relationship with [the subsidiary]." *Id.* at 223-24.

Plaintiff's theory underlying its claims against Utz is Utz's status as Inventure's parent.  *See, e.g.*, FAC at ¶ 29 ("Defendant INVENTURE operates as a wholly-owned subsidiary of Defendant UTZ."); *id.* at ¶ 31 ("Defendant UTZ manufactures and distributes the Products through

its subsidiary Defendant INVENTURE.").  These bare allegations are insufficient to hold Utz liable for Inventure's alleged conduct.  Critically absent from Plaintiff's FAC are any allegations to justify piercing the corporate veil and asserting claims directly against Utz.  Accordingly, Utz should be dismissed from this matter.

### B.  Plaintiff Lacks Standing

Challenges to standing at the motion to dismiss stage are brought under Rule 12(b)(1).  To survive a motion to dismiss pursuant to 12(b)(1), a plaintiff must demonstrate standing, which requires a showing that (1) the plaintiff has suffered an injury-in-fact; (2) there is a causal connection between the injury and the conduct at issue; and (3) the injury is likely to be redressed by a favorable decision.  *See*, *e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  A plaintiff must demonstrate standing separately for each form of relief sought, and a plaintiff seeking to represent a class must personally have standing.  *Id.* at 239.  Additionally, as the party invoking federal jurisdiction, Plaintiff bears the burden of proof.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).

A plaintiff is found to lack standing to pursue claims for injunctive relief where she fails to plead or prove a "real" or "immediate" threat.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983).  Critically, a plaintiff also "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he ... will be injured in the future."  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *see also Nicosia*, 834 F.3d 220, 239 (2d Cir. 2016).  In other words, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974).

### 1.    Plaintiff Has No Standing To Seek Injunctive Relief

Plaintiff does not have standing to seek injunctive relief because she has not–and cannot–establish a likelihood of future harm.  Courts in the Second Circuit routinely dismiss claims for injunctive relief in consumer lawsuits when a plaintiff fails to allege that she intends to purchase the products at issue in the future.  *See*, *e.g. Nicosia*, 834 F.3d 220, 239 (2d Cir. 2016) (dismissing plaintiff's claim for injunctive relief where he failed to allege that he intended to use Amazon in the future to buy any products); *see also Kommer*, 252 F. Supp. 3d at 309-10 (finding plaintiff lacked standing to seek injunctive relief where plaintiff failed to allege that he intended to purchase the products again or that he would be misled by defendants' marketing again or in the future); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015) (holding that plaintiff cannot rely on a past injury alone because past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects); *Warner v. Starkist Co.*, No. 18-CV-406, 2019 WL 1332573, at *4 (N.D.N.Y. Mar. 25, 2019) (holding that plaintiff lacked standing to bring claim for injunctive relief based on his allegation that "he would not have purchased the product or ... paid as much for the product"); *Haseman v. Gerber Products Co.,* No. 15-CV-02995, 2016 WL 5477595, at   *9 (E.D.N.Y. Sept. 28, 2016) (plaintiffs' injunctive relief claim dismissed on the grounds that they failed to allege that they continue to purchase the products at issue or that they will purchase them in the future).

Plaintiff's allegations in her FAC are no different than those routinely rejected by courts in the Second Circuit in that she has failed to allege any real or immediate threat of future harm to satisfy the standing requirement.  Importantly, Plaintiff does not allege that she is still purchasing the Snack Chips or that she intends to purchase them in the future.  *See generally* FAC.  In fact, Plaintiff makes clear that she no longer purchases the Snack Chips.  *See* FAC at ¶ 24 (stating

"[a]fter Plaintiff learned that the Product did not contain potato skins, she ceased purchasing and consuming the Product").  The fact that she has explicitly stated she is no longer purchasing or consuming the Snack Chips is enough to dismiss Plaintiff's claim for injunctive relief.  Yet there is more.  Plaintiff further alleges that she would not have purchased the Snack Chips had she known that they did not contain potato skins.  *See* FAC at ¶ 23.  Plaintiff's allegation constitutes a concession that she *will not* purchase the Snack Chips in the future and therefore will not suffer future harm.  *See*, *e.g.*, *Casey v. Odwalla, Inc*., 338 F. Supp. 3d 284, 299-300 (S.D.N.Y. 2018) (holding that plaintiff's claim that she would not have purchased the product had defendants not misrepresented the product is effectively a concession that she does not intend to purchase the product in the future, particularly if defendants are required to alter their labeling scheme); *Parks*, 377 F. Supp. 3d at 249 (dismissing claims for injunctive relief, holding that an allegation that plaintiffs would purchase the products in the future if they were reformulated to correct allegedly misleading labeling does not sufficiently allege future injury to confer standing).

Plaintiff's allegations mirror those in *Casey* and *Parks*.  *See* FAC at ¶ 24 (stating, "[s]hould Plaintiff encounter the Product in the future, she could not rely on the truthfulness of Defendants' representations regarding the Products, absent corrective changes to the Products' labeling and packaging").  Time and time again, courts in the Second Circuit applying *Nicosia* have found that such allegations are simply not enough.  *Atik v. Welch Foods, Inc*., No. 15-CV-5405, 2016 WL 5678474, at *6 (E.D.N.Y. Sep. 30, 2016) (plaintiffs' allegations that if products at issue were sold with "non-deceptive" labels, plaintiffs would resume purchasing them, "are insufficient to establish a likelihood of future injury because [p]laintiffs cannot rely on past injury").

Thus, even under the most charitable reading of Plaintiff's allegations, her FAC entirely fails to establish a "real and immediate threat" of future injury sufficient to satisfy *Nicosia*'s

requirement that the plaintiff must establish a likelihood of future harm.  S*ee Nicosia*, 834 F.3d at 239.   Accordingly, it is respectfully requested that this Court dismiss Plaintiff's claim for injunctive relief with prejudice.

**2.      Plaintiff Lacks Standing To Assert Claims Based On Representations Not Seen**

Plaintiff cannot sustain a claim based on representations that she did not see before she purportedly purchased the Snack Chips.  Plaintiff's FAC contains references to certain alleged representations on Amazon.com's website as it relates to the Snack Chips.  *See, e.g.*, FAC at ¶¶ 11, 54, 60, 69.  References to Amazon.com's website cannot form the basis of Plaintiff's claims, however, because Plaintiff has neither alleged that she purchased the Snack Chips from Amazon.com (to the contrary, she purchased them at a gas station), nor did she ever allege that she saw the statements on Amazon.com's website prior to her purchase.  Plaintiff, therefore, cannot demonstrate causation with respect to any statements or representations on Amazon.com's website.  "To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg*, 8 F. Supp. 3d at 480 (citing *Gale v. Int'l Bus. Machs. Corp.,* 9 A.D.3d 446, 447 (2d Dept. 2004)); *Rapcinsky v. Skinnygirl Cocktails, L.L.C.,* No. 11-CV-6546, 2013 WL 93636, at *6 n. 3 (S.D.N.Y. Jan. 9, 2013); *Tyman v. Pfizer, Inc.*, No. 16-CV-0694, 2017 WL 6988936, at *24 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, No. 16-CV-6941, 2018 WL 481890, at *1 (S.D.N.Y. Jan. 18, 2018) (dismissing plaintiff's claims with prejudice insofar as they are based on alleged misrepresentations or omissions in defendant's non-label advertising that plaintiff did not see prior to purchasing the products).

Nowhere in the FAC does Plaintiff allege that she was aware of the statements and representations on Amazon.com's website at any time prior to their inclusion in her FAC,[2] much less prior to purchasing the Snack Chips.  Accordingly, any allegations concerning the content of Amazon.com cannot form the basis of Plaintiff's claims and should be disregarded by the Court.

### C.    GBL Statutes Do Not Apply To Out Of State Plaintiffs

Plaintiff seeks to represent a nationwide class of consumers and alleges violations of GBL §§ 349 and 350.  *See* FAC at ¶¶ 85, 95.  Plaintiff's claims predicated on violations of GBL §§ 349 and 350, however, must be dismissed as to any consumers who purportedly purchased the Snack Chips outside of New York.  It is well-established that GBL §§ 349 and 350 apply only to purchases made in New York state because those statutes—by their very terms—apply only to misconduct "in this state."  N.Y. Gen. Bus. Law § 349(a); *id.* at § 350; *see Szymczak v. Nissan N. Am., Inc.*, No. 10-CV-7493, 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011) (dismissing plaintiffs' claims under Rule 12(b)(6) as to those plaintiffs who do not reside in New York or did not purchase the at-issue product in New York); accord *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324-325 (2002)).

*Szymaczak* is directly on point.  In *Szymczak*, this Court dismissed plaintiffs' New York law claims as to those plaintiffs who did not purchase their automobiles in New York simply because the statutes do not apply to transactions occurring outside the state.  In its decision, this Court explained:

> Section 349 of the New York General Business Law provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). Section 350 proscribes "False advertising in the conduct of any business, trade

---

[2] Tellingly, Plaintiff did not include any allegations regarding Amazon.com's website in her original complaint.  *See generally* Doc. No. 1, Complaint.

or commerce or in the furnishing of any service *in this state*...." N.Y.
Gen. Bus. Law § 350.

*Szymaczak*, 2011 WL 7095432, at *12 (emphasis in original).

The New York Court of Appeals also concluded that the text of GBL §§ 349 and 350
preclude claims by out-of-state plaintiffs:

> The reference in section 349(a) to deceptive practices in "the
> conduct of any business, trade or commerce or in the furnishing of
> any service *in this state*" unambiguously evinces a legislative intent
> to address commercial misconduct occurring within New York.
> Indeed, an examination of the text of General Business Law § 349
> leads us to conclude that "in this state" can only modify "the conduct
> of any business, trade or commerce or the furnishing of any service."
> Thus, to qualify as a prohibited act under the statute, the deception
> of a consumer must occur in New York.

*Goshen*, 98 N.Y.2d at 324-25 (2002) (emphasis in original); *see also Thomas v. JPMorgan Chase
& Co.*, 811 F. Supp. 2d 781, 800 (S.D.N.Y. July 29, 2011) ("[T]he legislative history of the statute
makes clear that it was intended to protect consumers in the state of New York."); *see also Gotlin
v. Lederman*, 616 F. Supp. 2d 376, 392 (E.D.N.Y. 2009) ("§§ 349 and 350 only prohibit consumer
deception or false advertising that occurs in New York state.").  Accordingly, even if Plaintiff has
stated a claim under GBL §§ 349 and 350—which she has not—those claims must be dismissed
as to a nationwide class of consumers who purchased the Snack Chips outside of New York.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss
Plaintiff's FAC in its entirety and with prejudice.

Dated: September 17, 2019
        New York, New York

                                        Respectfully Submitted,

                                        ___*/s/ Richard Fama*___
                                        Richard Fama, Esq. (RF5358)